UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Jennifer Brodiski, on behalf of herself and all others similarly situated,

                Plaintiff,

     v.

Microsoft Corporation,

                Defendant.

NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jennifer Brodiski ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows:

## I.    INTRODUCTION

1. A browser extension is a small software program that adds functionality to a web browser. Coupon browser extensions are widely used by online shoppers to identify coupons and discounts on products and services they have already added to their online shopping cart.

2. In most instances, the consumer needs to install the browser extension and register for an account in order to get access to coupons and discounts.

3. However, the Microsoft Shopping browser extension comes pre-loaded on Microsoft's Edge browser, which is the default internet browser on every Windows PC.

CLASS ACTION COMPLAINT - 1

4.      According to Microsoft, the Microsoft Shopping browser extension is a free tool that automatically looks for coupons, offers users price comparison and price history tools, incorporates a built-in rewards point system called "Microsoft Cashback," and has purportedly found users over $12.4 billion in savings.

5.      Because of this, the Microsoft Shopping browser extension is appealing to consumers looking for a discount on a product or service they are already interested in purchasing and have already added to their online shopping cart.

6.      Microsoft Shopping can be used on desktop and laptop computers, and it can also be used on mobile devices by downloading the Microsoft Edge or Microsoft Bing Search apps.

7.      Millions of people in the United States have activated the Microsoft Shopping browser extension during the course of their online purchases.

8.      The Microsoft Shopping browser extension, however, is designed to steal commissions from online marketers, including but not limited to website operators, online publications, YouTubers, bloggers, influencers, and other types of content creators.

9.      Online marketers earn money by participating in affiliate marketing programs. As part of these programs, the online marketer is assigned unique affiliate marketing links and tracking tags, including affiliate marketing cookies. Correspondingly, online merchants use these tracking tags and affiliate marketing cookies to determine who gets credit for referrals and earns sales commissions.

10.      Online marketers direct their followers and viewers to specific products or services via affiliate marketing links they share on their respective platforms and social media channels.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

11.     When someone clicks the online marketer's affiliate link and makes a purchase, the online marketer gets credit for the referral and earns a sales commission.

12.     However, the Microsoft Shopping browser extension cheats these online marketers out of commissions they are entitled to by altering the checkout process and removing their tracking tags and affiliate marketing cookies.

13.     As described in more detail throughout this complaint, Microsoft programmed the Microsoft Shopping browser extension to systematically appropriate commissions that belong to influencers like Plaintiff and Class members. It does so by substituting its own affiliate marketing cookie in place of the online marketer's affiliate marketing cookie, and this happens even though the customer used the online marketer's specific affiliate web link to access the website on which they purchased the product or service.

14.     Plaintiff is an online marketer whose commission payments Microsoft has wrongfully misappropriated. Plaintiff brings this case individually and on behalf of all others similarly situated to recover the damages it has sustained and to enjoin Microsoft's wrongful conduct going forward.

## II.     JURISDICTION

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Microsoft, there are more than one hundred Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

16.     This Court has personal jurisdiction over Microsoft because it maintains its principal place of business in Washington.

CLASS ACTION COMPLAINT - 3

17.     Venue is proper under 28 U.S.C. § 1391(a) through (d) because Microsoft's headquarters and principal place of business is located in this District, Microsoft resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Microsoft's governance and management personnel.

### III.    PARTIES

**A.    Plaintiff**

18.     Jesika Brodiski is a resident of Renton, Washington.

**B.    Defendant**

19.     Microsoft Corporation ("Microsoft" or "Defendant") is a Washington corporation with a principal place of business at 1 Microsoft Way, Redmond in King County, Washington.

### IV.    RELEVANT FACTS

**A.    Background**

**1.    The Microsoft Shopping Browser Extension**

20.     Microsoft launched Microsoft Shopping in 2020, which is pre-installed on its Microsoft Edge browser—the default internet browser on every Windows PC.

21.     Microsoft touts Microsoft Shopping's ability to save consumers time and money by instantaneously scraping the web for coupon codes and discounts.

22.     Microsoft has expanded the Microsoft Shopping browser extension to a standalone product that can be added to competing internet browsers, such as Google Chrome.

23.     Microsoft has also integrated the Microsoft Shopping software into Microsoft's Bing search engine so that individuals using the Firefox or Safari website browsers, which are

CLASS ACTION COMPLAINT - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

themselves incompatible with the Microsoft Shopping browser extension, are able to use the Microsoft Shopping features.

24.    Microsoft entices users to activate the Microsoft Shopping browser extension by promising to search the internet for coupons that can be applied to items that are already in the user's online shopping cart, offering price-comparison and price history tools, and by providing shopping rewards where users can earn cashback for online purchases.

25.    Unlike other coupon browser extensions, which require the user to first download the extension and register for an account in order to access coupons and discounts, Microsoft Shopping is pre-installed on millions of devices and can be used with just a few clicks.

26.    This seamless functionality gives Microsoft a competitive edge, allowing it to reach consumers who are less tech savvy and may be wholly unfamiliar with the concept of browser extensions.

27.    This popularity is buoyed by the fact that all Windows computers—both desktops and laptop PCs—are pre-loaded with only one internet browser, Microsoft Edge.

28.    As a result, any user who purchases a new Windows PC and wishes to shop online must do so using the Microsoft Edge browser (pre-loaded with Microsoft Shopping) unless the user manually downloads a different browser of their choice.

29.    The Microsoft Edge Browser is the third most commonly used web browser in the United States behind Google Chrome and Safari.

30.    Correspondingly, there are millions of individuals using Microsoft Shopping each day, and Microsoft claims to have saved shoppers over $12.4 billion U.S. dollars, averaging approximately $431 per shopper each year.

**2.    Online Marketers and the Commission System**

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

31.     With the rise of e-commerce, social media and increasing popularity of platforms like YouTube, Instagram, and TikTok, several retailers have turned to online marketers to promote and market their products to consumers.

32.     Online marketers make commissions by directing their readers and/or followers to affiliate links they publish or share on their various platforms and social media channels.

33.     Affiliate links are web-based hyperlinks that direct consumers to a website where they can purchase the product or service being promoted by a website, or online marketer.

34.     Online vendors use tracking tags to determine whether a consumer landed on the webpage for their product or service and made a purchase after clicking an affiliate link. Online vendors then attribute the sale to the specific influencer responsible for the affiliate link, providing that individual with a commission payment.

**3.     Microsoft's Misappropriation of Online Marketer Commissions**

35.     Unbeknownst to Plaintiff and other online marketers, Microsoft uses the Microsoft Shopping browser extension to manipulate online shoppers' website traffic and network traffic transmissions, namely by altering the tracking tags that are transmitted during the checkout process.

36.     This allows Microsoft to surreptitiously take credit for sales commissions it did not earn, which emanated from creator's unique marketing affiliate links.

37.     Microsoft Shopping displaces tracking tags that point to influencers as the source of the referral, substitutes Microsoft's own tracking tags, and holds Microsoft out as the referrer of the specific products and/or services.

38.     Again, this happens even if the sale in question emanated from a content creator's specific affiliate marketing link to a specific product or service.

CLASS ACTION COMPLAINT - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

39.     Analysis of network traffic on websites where the Microsoft Shopping browser extension is running reveals electronic transmissions and communications between an online shopper's web browser, the given website, and other third parties.

40.     Importantly, network traffic is typically invisible to ordinary website users.

41.     However, reviewing network traffic demonstrates that, when an online shopper activates Microsoft Shopping, the browser extension silently and invisibly removes affiliate cookies and tracking tags that would otherwise credit the rightful salesperson—the influencer—with the sale of that particular product or service.

42.     The images below illustrate what happens when an online shopper wants to purchase a product or service a specific influencer is promoting by clicking on that influencer's affiliate link and proceeding to the merchant's website to complete the checkout. Importantly, whether the influencer will be credited with the referral and commission ultimately depends on whether the online shopper has activated the Microsoft Shopping browser extension.

CLASS ACTION COMPLAINT - 7



Figure 1. The screenshot was taken during the checkout process at bestbuy.com after navigating to that webpage from an online marketer's affiliate marketing link.

43.    Figure 1 shows the online merchant's website markup (left), which is what ordinary website visitors see, and the inspection panel (right) provides a glimpse into what is happening behind the scenes prior to activating the Microsoft Shopping browser extension.

44.    The user navigated to bestbuy.com by clicking on an influencer's affiliate marketing link, added an item to their cart, and proceeded to the checkout page.

45.    The extensions tab shows that the Microsoft Shopping browser extension is available, but it has not yet been activated on this particular webpage. At this point, the campaign and partner cookies correctly attribute the referral to "Benable" as shown in Figure 2.

CLASS ACTION COMPLAINT - 8



Figure 2. The image above is a zoomed-in image of Figure 1, which shows the affiliate marketing cookies correctly crediting the content creator with the referral and forthcoming sale of the product.

46.    In this scenario, the online marketer  partnered with Benable gets credit for the referral and should receive a commission if the shopper completes their purchase.

47.    However, as demonstrated in the images below, once the Microsoft Shopping browser extension is activated, the "campaign" and "partner" cookies are removed and replaced with Microsoft's own affiliate marketing cookie.

48.    In Figure 3, Microsoft Shopping created a pop-up alerting the user they could earn cash back on the purchase.

CLASS ACTION COMPLAINT - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



Figure 3. Microsoft Shopping creates a pop-up banner on the shopper's web browser, enticing the shopper to activate the browser extension even though it did not identify any coupons for the purchaser to use.

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

49.     If the user clicks the blue "Ok" button shown in Figure 3, Microsoft Shopping is activated, and it replaces the influencer's affiliate marketing cookies with Microsoft's own affiliate marketing cookies ("198_BingRebatesbyMicrosoft_0) as shown in Figures 4 and 5 below.



Figure 4. The screenshot above was taken during checkout after the user selected the blue "Ok" button shown in Figure 3. The green check mark in the right column shows that "Cash back is activated!"

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



Figure 5. Zoomed-in screenshot showing Microsoft's own marketing affiliate cookies.

50.    Figures 4 and 5 demonstrate how Microsoft alters the checkout process and substitutes the online influencer's cookies (shown in Figure 2) for its own cookies.

51.    In this scenario, Microsoft gets credit for the referral and ultimate purchase of the product even though it did not help the online shopper identify the product, nor did it provide the online shopper with any additional discount or coupon for the product.

**B.    The Exploitation of Last-Click Attribution and Affiliate Marketing Links.**

52.    When an online shopper clicks on a content creator's affiliate marketing link, a tracking tag is generated that allows the online merchant to know who to credit with the referral and commission for the sale.

53.    The tracking tag is saved on the online shopper's browser in the form of a cookie that will expire sometime in the future, commonly between 2-30 days, which varies depending

CLASS ACTION COMPLAINT - 12

on the particular affiliate program. This ensures that, even if it takes a few days for the online shopper to complete their purchase, the content creator will still get credit for the sale.

54.     When it comes to online referral commissions from affiliate marketing links, the industry standard used for crediting sales is "last-click attribution," which means the last click determines who gets credit for a sale.

55.     Consider a customer that clicks on a blogger's affiliate link to a particular product but never purchases the product. A few weeks pass, and the customer sees a different content creator's video promoting the same product. The customer clicks on the YouTuber's affiliate link for the product and completes their checkout.

56.     In this scenario, last-click attribution gives the YouTuber credit for the sale, not the blogger. This happens because, when the customer clicks on the YouTuber's affiliate link and opens the new checkout tab, the YouTuber's affiliate cookie displaces the blogger's affiliate cookie.

57.     The Microsoft Shopping browser extension is purposely designed to exploit the last-click attribution process, and it achieves this by producing pop-ups during the checkout process in order to simulate referral clicks.

58.     Stated differently, Microsoft has designed its browser extension in a manner that requires users to actively engage with the browser extension—i.e., click buttons—in order to receive a discount, test coupons, or earn cash back. These clicks are important to Microsoft because, without them, the online marketer in question will still be credited with the sale and receive any corresponding commission payment. Microsoft only gets credit for the sale if they get the online shopper to click on their pop-up and activate Microsoft Shopping.

CLASS ACTION COMPLAINT - 13

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

59.    Accordingly, Microsoft's goal is to entice online shoppers to activate Microsoft Shopping even when the browser extension has not identified any coupons.

**C.    Activation of the Microsoft Extension**

60.    Microsoft entices online shoppers to activate the Microsoft Shopping browser extension in several different ways, each of which displaces the rightful referrer and claims commission credit for sales Microsoft did not influence, much less generate.

61.    **Scenario 1:** In Figure 6, the online shopper is using Microsoft Edge as their internet browser. The online shopper clicks a content creator's marketing affiliate link to



Figure 6. Screenshot taken during the checkout process on Microsoft Edge.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

hudabeauty.com and adds a product to their shopping cart. As the customer proceeds through the checkout process, Microsoft Shopping creates a pop-up box alerting the user that "Microsoft Edge found coupons," thereby enticing the user to click the blue "Try all coupons" button.

62.     If the online shopper clicks the "Try all coupons" button, Microsoft Shopping discreetly opens a new tab that acts as a simulated referral click, which removes the content creator's affiliate cookie and replaces it with Microsoft's own affiliate marketing cookie.

63.     Thus, as a result of clicking the "Try all coupons" button, Microsoft is able to seamlessly and invisibly insert its own affiliate marketing cookies, thereby stealing credit for the sale.

64.     **Scenario 2:** The same online shopper clicks on an influencer's affiliate marketing link to BestBuy.com and proceeds to checkout. The influencer's affiliate marketing cookies—previously shown in Figure 2—attach and should credit the influencer with the sale. At checkout, Microsoft Shopping generates the same style pop-up as in scenario one, enticing the user to click the "Try all coupons" button. The user clicks the button, but none of the discount codes work.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13



14 Figure 7. Screenshot taken during checkout on BestBuy.com, which shows the markup portion
15 of the website and demonstrates that none of the codes Microsoft Shopping provided worked.
The red text states, "Sorry, we didn't recognize this promo. Please make sure it's valid and not
16 an in-store only promo."

17      65.     Despite this, and as shown in Figure 8 below, Microsoft Shopping still removes

18 the influencer's affiliate marketing cookies (previously shown in Figure 2) even though

19 Microsoft failed to identify any relevant coupons. As a result, the influencer will not receive

20 credit for the referral or commission they rightfully earned for this sale.

21
22
23
24
25
26

CLASS ACTION COMPLAINT - 16

1
2
3
4
5
6
7
8
9



10
11

Figure 8. Screenshot showing what is going on behind the scenes in Figure 7, which is otherwise invisible to ordinary website users.

12
13
14
15

66.    **Scenario 3:** The same online shopper clicks on a blogger's affiliate marketing link and proceeds to complete a checkout at Walmart.com. This time, the influencer's unique affiliate marketing tag is generated as an "AID" cookie.

16
17
18

67.    As shown in Figure 9, Microsoft Shopping has not identified any coupons that apply to the purchase, but it entices the user to activate Microsoft Shopping's cash back rewards feature to "Get up to 3% cash back."

19
20
21
22
23
24
25
26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14



Figure 9. Screenshot taken during checkout at Walmart.com

68.    If the user clicks the blue "Ok" button shown in Figure 9, Microsoft Shopping once again creates a simulated referral click that removes the influencer's affiliate marketing cookies and invisibly credits Microsoft with the referral and ultimate commission on the sale.

69.    As shown in Figure 10, the influencer's unique affiliate marketing cookie has been removed by Microsoft Shopping and replaced with "wmlspartner=imp_2002851." On information and belief, this will credit Microsoft, Bing, or one of its agents with the sale and corresponding referral commission.

23
24
25
26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1



Figure 10. Screenshot taken after the user has activated the Microsoft Shopping Browser.

70.     In each of these scenarios, Microsoft uses its browser extension to wrongfully steal commissions from their rightful owners.

**D.    Plaintiff's Experience**

71.     **Jesika Brodiski** is a content creator that has earned commission payments from affiliate marketing links she shared on her social media pages (@jesbro96).

72.     In the past year, Ms. Brodiski has received approximately $20,000 in commission payments from products purchased via her affiliate marketing links. However, Ms. Brodiski would have earned more income in the form of commission payments but for Microsoft's scheme to usurp commissions through the Microsoft Shopping browser extension.

73.     Microsoft, via its browser extension, stole credit for sales and conversions that Plaintiff originated through her own platforms, emanating from the affiliate marketing links she shared on those platforms.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**D.    Damages & Harm**

74.    Plaintiff and Class Members were harmed by Microsoft's conduct because the Microsoft Shopping browser extension systematically steals commission payments from their rightful owners—i.e., the individual that promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

75.    Plaintiff Brodiski promotes products via her social media channels and hosted affiliate marketing links to those products. She had several marketing affiliate links with Walmart.com, and her referral tag was set as an "AID: cookie, which corresponds to a specific referral program and specific referrer.

76.    When one of Ms. Brodiski's followers clicked on her affiliate marketing links and added products to their online shopping cart, her AID cookie attached and attributed the referral and sale of the product to Ms. Brodiski, thereby crediting her with the sale and corresponding commission payment.

77.    However, as depicted in Figure 11, if the user activated the Microsoft Shopping browser extension during checkout, Microsoft wrongfully removed her AID cookie and replaced it with its own AID cookie (wmlspartner=_2003851), stealing credit for the referral and corresponding commission payment for that particular product.



Figure 11. Screenshot taken from Walmart.com which shows that Microsoft inserted its own affiliate marketing cookies after Microsoft Shopping was activated during checkout.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

78.    Ms. Brodiski spent a substantial amount of time and money cultivating her follower-base and promoting the products featured in its affiliate marketing links.

79.    She relies on the stream of income she generates through her work as a content creator.

80.    Plaintiff was harmed by Microsoft, via the Microsoft Shopping browser extension, which deprived her of referral fees and sales commissions she is rightfully entitled to as the generator of those referrals and sales.

81.    The Microsoft Shopping browser extension is activated during millions of online purchases each year. In the absence of the Microsoft Shopping browser extension, Plaintiff and Class Members would have earned more money in the form of referral fees and sales commissions from their respective affiliate marketing links.

82.    Plaintiff continues to devote time and energy to content creation to generate commissions. Plaintiff accordingly faces future harm in the form of stolen referral fees and sales commissions because the Microsoft Shopping browser extension continues to wrongfully appropriate affiliate marketing commissions with each passing day.

## V.    CLASS ALLEGATIONS

83.    Plaintiff, on behalf of herself and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seeks damages and injunctive relief on behalf of the members of the following Class and constituent Subclass (collectively, the "Class"):

84.    **Nationwide Class:** All persons in the United States who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to

CLASS ACTION COMPLAINT - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Microsoft as a result of the Microsoft Shopping browser extension.

85.    **Washington Subclass:** All persons in Washington who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to Microsoft as a result of the Microsoft Shopping browser extension.

86.    Excluded from the Class are Defendant and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

87.    **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Class, geographically dispersed throughout the United States, such that joinder of all Class members is impracticable. There are at least thousands of members of the Subclass, such that joinder of all Subclass members is likewise impracticable.

88.    **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. The factual and legal bases of Defendant's liability are the same and resulted in injury to Plaintiff and all other members of the Class.

89.    **Adequate representation:** Plaintiff will represent and protect the interests of the Class both fairly and adequately. Plaintiff has retained counsel competent and experienced in complex class-action litigation. Plaintiff has no interests that are antagonistic to those of the

CLASS ACTION COMPLAINT - 22

Class, and its interests do not conflict with the interests of the Class members she seeks to represent.

90.    **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class and because Class members share a common injury. Thus, determining damages with respect to the Class as a whole is appropriate. The common applicability of the relevant facts to the claims of Plaintiff and the proposed Class are inherent in Defendant's wrongful conduct because the injuries incurred by Plaintiff and each member of the Class arose from the same conduct alleged herein.

91.    There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

a.    Whether Defendant programmed and designed the Microsoft Shopping browser extension in a manner that wrongfully credits it as the originator of sales referrals;

b.    Whether the scheme described herein results in Microsoft being awarded commission payments it did not rightfully earn;

c.    Whether Microsoft was unjustly enriched to the detriment of Plaintiff and Class Members in the form of commission payments;

d.    Whether Defendant, through the actions alleged in this complaint, violated consumer protection laws in the state of Washington;

e.    Whether consumers and Class members have been damaged by Defendant's conduct; and

f.    The nature and scope of appropriate injunctive relief.

CLASS ACTION COMPLAINT - 23

92.    **Superiority:** Class proceedings on these facts are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

93.    Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

- Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

- The claims of Class Members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

CLASS ACTION COMPLAINT - 24

## TOLLING OF THE STATUTES OF LIMITATIONS

94.     All applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and Class Members could not have reasonably discovered Defendant's practice of displacing their affiliate marketing tracking tags and cookies, surreptitiously manipulating network transmissions, and allowing Microsoft to take credit for sales commissions it did not earn.

95.     Defendant was and is under a continuing duty to disclose to Plaintiff and Class Members their practice of displacing tracking tags that point to influencers as the source of a referral and substituting their own tracking tags to appropriate commissions that belong to influencers like Plaintiff and Class members. As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VI.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS)

96.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

97.     Plaintiff lacks an adequate remedy at law.

98.     Plaintiff and Class members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived.   These payments were rightfully earned by Plaintiff and Class members, not Microsoft.

99.     Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping browser extension wrongfully claiming credit for commissions via last-click attribution.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

100.    Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Shopping browser extension would cause the harm described herein.

101.    But for Microsoft's unjust and improper use of the browser extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and Class Members' respective affiliate marketing links.

102.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, it has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

103.    Microsoft continues to benefit and profit from the browser extension while Plaintiff and Class members continue to have their rightful commission payments diverted to Microsoft.

104.    Microsoft's unjust enrichment is traceable to, and resulted directly and proximately, from the conduct alleged herein, including by using the Microsoft Shopping browser extension to wrongfully credit itself with referrals and commissions it did not rightfully earn.

105.    The benefit conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

106.    Equity and good conscience militate against permitting Microsoft to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and Class Members.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

## SECOND CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (ON BEHALF OF THE CLASS)

107.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

108.    Plaintiff and Class members are engaged in an economic relationship with eCommerce merchants by referring their followers to those merchants through affiliate links. In return, eCommerce merchants provide Plaintiff and Class members with referral fees or commissions. These relationships are ongoing, and Plaintiff and Class members expect to continue earning commissions in exchange for referrals.

109.    Microsoft is aware of the referral and commission relationship between Plaintiff and Class members on the one hand and eCommerce merchants on the other hand.

110.    Through use of the Microsoft Shopping browser extension, Microsoft steals commission payments from Plaintiff and Class members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, Microsoft displaces tracking tags that identify online marketers as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from a content creator's affiliate marketing link.

111.    Microsoft either intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees.

112.    Plaintiff and Class Members were harmed by Microsoft's conduct because the Microsoft Shopping browser extension deprives Plaintiff and Class Members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

113.    Microsoft's conduct was a substantial factor in causing harm to Plaintiff and Subclass members in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

114.    As a result of the above conduct, Microsoft is liable to Plaintiff and Class members for damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**CONVERSION**

115.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

116.    Plaintiff and Class Members possessed or had a right to possess commissions they earned from referring consumers to products and services sold by eCommerce merchants. The amount of each commission constituted a specific and identifiable sum.

117.    Microsoft intentionally and substantially interfered with Plaintiff's and Class members' personal property by usurping commissions and referral fees owed to Plaintiff and Class members.

118.    Microsoft, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiff and Class members, without justification.

119.    Microsoft's wrongful exercise of control over Plaintiff's and Class members' personal property constitutes conversion.

120.    Plaintiff and Class members neither assented to nor ratified Microsoft's interference with their commissions.

121.    As a direct and proximate result of Microsoft's conversion, Plaintiff and Class members were harmed.

CLASS ACTION COMPLAINT - 28

122.    Microsoft is liable to Plaintiff and Class members for damages and costs permitted by law.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF THE WASHINGTON CVONSUMER PROTECTION ACT, RCW § 19.86, et seq.

123.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

124.    Defendant is a "person" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and it conducts "trade" and "commerce" within the meaning of RCW 19.86.010(2). Plaintiff and other members of the Class are "persons" within the meaning of RCW 19.86.010(1).

125.    Plaintiff is a Washington resident, and Defendant is based in Washington and made the decision to design Microsoft Shopping browser extension is such a manner that it cheats these online marketers out of commissions they are entitled to by altering the checkout process and removing their tracking tags and affiliate marketing cookies

126.    Defendant engaged in an unfair act that affects public policy by designing and maintaining its Microsoft Shopping browser extension is such a manner that it cheats these online marketers out of commissions they are entitled to by altering the checkout process and removing their tracking tags and affiliate marketing cookies

127.    Defendant's unfair acts have injured a substantial portion of the public. Defendant's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

128.    As a direct and proximate result of Defendant's unfair acts and practices, Plaintiff and Class members suffered injury in fact.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1      129.    As a result of Defendant's conduct, Plaintiff and members of the Class have

2  suffered actual damages.

3      130.    Plaintiff and Class members are entitled to an order enjoining the conduct

4  complained of herein and ordering Defendant to take remedial measures to stop its conduct;

5  actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including reasonable

6  attorneys' fees; and such further relief as the Court may deem proper.

7

8

9                          **VII.    JURY DEMAND**

10     1.    Plaintiff demands a trial by jury on all issues so triable.

11

12     DATED this 16th day of January, 2025.

13                          TOUSLEY BRAIN STEPHENS PLLC

14                          By: */s Jason T. Dennett*
                              Jason T. Dennett, WSBA #30686
15                             jdennett@tousley.com
                          By: */s Joan Pradhan*
16                             Joan Pradhan, WSBA #58134
                              jpradhan@tousley.com
17                             1200 Fifth Avenue, Suite 1700
                              Seattle, Washington  98101
18                             Telephone:  (206) 682-5600

19                          Adam E. Polk (*pro hac vice* forthcoming)
                          Simon S. Grille (*pro have vice* forthcoming)
20                          **GIRARD SHARP LLP**
                          601 California Street, Suite 1400
21                          San Francisco, CA 94108
                          Telephone: (415) 981-4800
22                          apolk@girardsharp.com
                          sgrille@girardsharp.com
23

24                          ***Attorneys for Plaintiff***

25

26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992